**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

SAE BIANG OPTICAL, et al().   PLAINTIFFS

v.   **NO. 3:05-CV-168-JDM**

KENMARK OPTICAL, INC.   DEFENDANT/THIRD PARTY PLAINTIFF

v.

OLSON & HIERL, LTD. and
SEYMOUR ROTHSTEIN   THIRD PARTY DEFENDANTS

**MEMORANDUM OPINION**

The third party defendants in this matter move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the sole claim for negligence in the third party complaint. The court will grant the motion and dismiss the third party complaint based on the applicable statute of limitations.

**I.**

This is a diversity action between two manufacturers of eyewear. Their dispute arises under two contracts, in which, generally, the defendant Kenmark Optical, Inc. ("Kenmark") acquired the sale and distribution rights of magnetic clip-on sunglasses developed and manufactured by the plaintiffs Sae Biang Optical and Suk Jae Lee (collectively "Sae Biang"). Sae Biang has filed this action asserting breach of contract claims; Kenmark has filed a counterclaim.

In addition, Kenmark has filed a third party complaint for legal malpractice.[1] One feature of the Sae Biang contracts, according to Kenmark, provided that it, after due diligence, would assume the burden of defending any patent infringement claims. Thus before executing these contracts, Kenmark consulted with its legal counsel, Seymour Rothstein, an attorney with the Chicago law firm, Olsen & Hierl, Ltd. (collectively "Rothstein").[2]

According to the allegations in the third party complaint, Kenmark retained Rothstein to determine the validity of Sae Biang's asserted patent rights before entering the agreements. Rothstein rendered a favorable opinion, apparently concluding Kenmark's sale and distribution of the Sae Biang eyewear would not infringe the patent rights of others. Kenmark alleges that in reliance on Rothstein's opinion, it entered into the Sae Biang contracts on January 1 and 2, 2001. After Kenmark received the first shipment of product, it was surprised to receive service of process in a patent infringement suit in March 2001. Aspex Eyewear, Inc. initiated the suit against Kenmark in the United States District Court, Southern District of New York. Kenmark immediately forwarded the complaint to Rothstein. Kenmark further alleges that through error or omission, Rothstein had failed to discover a patent held by Aspex, and after reviewing the complaint, Rothstein reported that Aspex's allegations were likely meritorious. Rothstein allegedly counseled Kenmark not to purchase or sell the Sae Biang eyewear. Aspex agreed to a dismissal of the suit in exchange for Kenmark's agreement to abandon the sale of the Sae Biang

---

[1] The movants may disagree with this simple characterization of the claim because the third party complaint contains allegations seeking apportionment and indemnity. However, Kenmark concedes the claim is for professional negligence, a position consistent with allegation that the third party defendants "provided legal services ... in a negligent fashion, so as to deviate from acceptable standards of care." (¶ 28, docket no. 49.)

[2] In the amended complaint, the plaintiffs name Rothstein as an additional defendant on a claim for tortious interference of contract. The court addresses the merits of this claim in a separate memorandum opinion and order.

eyewear, and did so in April 2001. Although in 2001, Sae Biang was critical of Kenmark's decision not to defend the Aspex suit, according to the third party complaint, Sae Biang took no action for more than four years before filing this suit against Kenmark for breach of contract.

## II.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The pivotal issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III.

Kentucky imposes a one-year limitation on actions for professional negligence. KY. REV. STAT. § 413.245. The parties debate when the one-year limitation began to run. The statute provides that "a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured."

The court will first address whether Kenmark filed the third party complaint within one year of the date of the "occurrence." There is no dispute Rothstein performed the legal services

that form the basis of the third party complaint in 2001. The date of Rothstein's alleged error or omission, however, is not determinative of when the limitation period began to run. The Kentucky Supreme Court interprets the word "occurrence" as synonymous with the phrase "cause of action," not in reference to the time of the professional "act or omission." *See Pedigo v. Green,* 169 S.W.3d 831 (Ky. 2004).[3] "A professional negligence claim does not accrue until there has been a negligent act and until reasonably ascertainable damages are incurred." *Id.* at 833. In cases involving transactional errors, the malpractice claim accrues when the damages attributable to the error become "fixed and non-speculative." *Id.* (citing *Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121, 125 (Ky. 1994)).

The question then is when did Kenmark's malpractice claim accrue; or, in other words, when did the damages become definite and non-speculative? Kenmark argues that although it knew about Rothstein's error and abandoned the sale of the Sae Biang eyewear in early 2001, Kenmark did not sustain any damages until four years later when Sae Biang filed this suit for breach of contract. Kenmark's assertion is not well taken. According to Kenmark's counterclaim, Kenmark paid $50,000 as consideration at the time of the signing of the Sae Biang contracts. Kenmark alleges it entered these contracts in reliance on Rothstein's negligent counsel, but for which, Kenmark would not have sustained a $50,000 loss. In its counterclaim, Kenmark further seeks damages for a loss of profits in the amount of 4.5 million dollars. Because Kenmark sustained immediate and future economic losses apparently calculable under

---

[3]In the only reported decision of the United States Court of Appeals for the Sixth Circuit addressing this statute in recent years, the panel applied the "discovery" rule but held the "occurrence" rule not applicable to the facts of the case. *See Nicely v. McBrayer, McGinnis, Leslie & Kirkland*, 163 F.3d 376, 385-86 (6th Cir. 1998). Thus, under the "occurrence" prong of the analysis here, this court must find guidance in the opinions of the Kentucky Supreme Court. *See Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318 (6th Cir. 1999).

the Sae Biang agreements, Kenmark's damages were not speculative. The court concludes the malpractice claim accrued in 2001 and the one-year limitation period began to run at that time.

Kenmark essentially argues additional damages are prerequisite to the running of the statute, damages such as litigation costs for defense counsel in the instant action. The court disagrees. The circumstances in this case distinguish it from cases involving litigation errors or transactional errors where the damages, in their entirety, are contingent on the outcome of a later event.[4] When Kenmark abandoned the sale and distribution of the Sae Biang products, its losses under the contracts were not hypothetical, but real and concrete. Kenmark may not have known the full extent of its damages, but a legal injury is not speculative merely because the precise dollar amount of damages is subject to dispute. Kenmark sustained a concrete injury as early as April 2001, including litigation costs in the Aspex suit. Under the occurrence rule, therefore, the one-year limitation period expired in May 2002.

The second limitation period contained in § 413.245, referred to as the "discovery rule," is not applicable to the facts of this case. This rule provides that the limitation period begins to run when the plaintiff should have been aware of his cause of action. *Nicely v. McBrayer, McGinnis, Leslie & Kirkland*, 163 F.3d 376, 385-86 (6th Cir. 1998) (citing *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994)). Kenmark concedes it was aware of Rothstein's error in early 2001, and it cannot reasonably claim it did not appreciate the losses it incurred as a consequence of the Aspex litigation. Thus, the "occurrence" and "discovery" one-year periods were "coterminous." *See Nicely,* 163 F.3d at 386.

---

[4] As the Kentucky Supreme Court recently explained, "When professional negligence occurs during the course of formal litigation, we have held that the injury becomes definite and non-speculative when the underlying case is final ... because no cognizable claim has yet accrued." *Pedigo*, 169 S.W.2d at 833.

Instead of relying on this discovery rule, *per se*, Kenmark argues the limitation period should be extended under the doctrine of continuing representation – recognized in Kentucky as a "branch" of the discovery rule. *See id.* This doctrine holds that an attorney's continuing representation may under certain circumstances justify tolling the limitations period. *Id.* Here, Rothstein represented Kenmark in the Sae Biang or Aspex matter through May 2001. According to Kenmark, Rothstein continued to represent it in other patent matters through July 2004. On this basis, Kenmark argues the court should toll the limitations period to 2004.

The court finds no justification for applying the doctrine under the facts of this case. The doctrine of continuing representation applies particularly when the attorney-client relationship veils or inhibits a client's discovery of the professional negligence. There is no suggestion or implication here that Rothstein's representation delayed Kenmark's discovery of a potential negligence claim. Indeed, the facts suggest that Rothstein was commendably forthright about his mistake. Moreover, Kentucky law restricts application of the doctrine to a continuing representation that *"relates to the same transaction or subject matter as the allegedly negligent acts." Id.* at 387 (emphasis original, internal quotations omitted). Here, Rothstein's representation in the matter concluded in 2001. Kenmark clearly discovered the error, incurred a measure of damages, yet rested on its rights until July 2005, after Sae Biang filed suit.

The court concludes the negligence claim is time-barred because the one-year limitation period expired in 2002, more than three years before the filing of the third party complaint. The court will enter a separate order consistent with this memorandum opinion.

DATE:

cc: Counsel of Record

.007